SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

## Borough of Merchantville v. Malik & Son, LLC (A-66-12) (072255)

**Argued April 1, 2014 -- Decided August 7, 2014**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers whether the Eminent Domain Act, N.J.S.A. 20:3-1 to -47, specifically N.J.S.A. 20:3-6, requires a condemning authority to engage in bona fide negotiations with a mortgage holder that has obtained a final judgment of foreclosure for the property sought to be condemned.

Malik & Son, LLC (Malik) owned property (the Property) in the Borough of Merchantville (Borough) that was designated by the Borough as an area in need of redevelopment. Malik defaulted on the Property's mortgage loan and a final judgment of foreclosure was entered against it on February 28, 2011. LB-RPR REO Holdings, LLC (LB), a redeveloper of distressed properties, obtained the rights to the loan and final judgment of foreclosure.

On September 26, 2011, the Borough adopted a redevelopment plan for the Property and engaged an appraiser to ascertain the Property's fair market value. The appraiser assigned the Property a pre-renovation fair market value of $270,000. In a letter dated November 11, 2011, the Borough offered Malik $270,000 for the Property and enclosed the appraisal and facility assessment evaluation. The Borough informed Malik that it would assume "that [Malik] [does] not accept this current offer and [does] not wish to proceed with further negotiations with the Borough," if Malik did not respond by November 28, 2011. In a letter dated November 23, 2011, Malik's attorney replied that "the amount offered by [the Borough was] far less than [Malik] owes [its lender]. Therefore, [Malik] cannot accept [the Borough's] offer as [Malik] would not be in a position to provide clear title to the same." Malik's attorney stated the letter should be considered as "formal notification" of his client's rejection of the offer, but invited further discussion about "more reasonable compensation in an amount which would satisfy all liens and encumbrances on the [P]roperty." That same date, LB's attorney contacted the Borough and, among other things, informed the Borough that the Property was scheduled to be sold at Sheriff's Sale on December 7, 2011 and expressed its desire to meet with the Borough to discuss reasonable compensation for the Property.

On December 5, 2011, the Borough filed a declaration of taking and verified complaint in condemnation, and deposited $270,000 with the Clerk of the Superior Court. LB filed a motion to dismiss the complaint, arguing, among other things, that that the Borough breached its duty to engage in bona fide negotiations with Malik and LB, as the real party in interest, prior to initiating the condemnation action. The trial court concluded that that the Borough had no obligation to negotiate with LB, that the Borough had properly submitted its purchase offer to the owner of record, Malik, and that Malik's rejection of the offer satisfied the statutory requirement of bona fide negotiations prior to the exercise of eminent domain authority. The Appellate Division affirmed, holding that the Borough did not have a duty to negotiate with LB and that that the Borough satisfied its statutory obligation to negotiate in good faith with the title of record holder. Borough of Merchantville v. Malik & Son, LLC, 429 N.J. Super. 416 (App. Div. 2013). The Court granted 's LB's petition for certification. 214 N.J. 117 (2013).

**HELD**: Prior to instituting a condemnation action, a condemning authority has an obligation to present an offer to acquire the subject property and to engage in bona fide negotiations only with the holder of the title of record or the holder of the interest sought to be condemned. Therefore, the condemning authority here was not required to engage in negotiations with the holder of the final judgment of foreclosure for the property sought to be condemned.

1. The initiation of foreclosure proceedings does not extinguish the mortgagor's interest in the encumbered property. Pursuant to the right to redeem, the mortgagor has the right to satisfy the debt and regain complete ownership of his property at any time before entry of judgment. In New Jersey, the right to redeem extends beyond the foreclosure and Sheriff's Sale to "the ten-day period fixed by [Rule] 4:65-5 for objections to the [foreclosure] sale and until an

order confirming the sale if objections are filed under the rule." Hardyston Nat'l Bank v. Tartamella, 56 N.J. 508, 513 (1970). (pp. 12-14)

2. The State may take private property for public use with the payment of just compensation. N.J. Const. art. I, ¶ 20. The Eminent Domain Act (Act) governs such takings. Under the Act, "no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned . . . ." N.J.S.A. 20:3-6 (emphasis added). N.J.S.A. 20:3-2(c) defines condemnee as "the owner of the interest in the private property being condemned." This language has been interpreted to mean exactly what it says, that is, the condemning authority has the obligation to negotiate only with the title holder of record when it seeks to acquire a fee interest. City of Atl. City v. Cynwyd Invs., 148 N.J. 55 (1997). In Cynwyd, the Court explained that "[g]iven the breadth of the term 'condemnee,'" limiting the party with whom a condemning authority must negotiate to the title holder of record "avoids the difficult requirement of negotiating with each condemnee having an interest in the property." Id. at 70. The Court noted that other condemnees with compensable interests are still protected because they are permitted to participate in subsequent valuation and allocation proceedings. Id. at 70-71. In Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386 (2011), in which the Court recognized that a condemning authority may condemn less than a fee simple interest, the Court reaffirmed that "where a fee simple is being condemned, negotiations will take place with the fee owner alone." Id. at 407. (pp. 15-20)

3. The Act does not define what is necessary to meet the statutory requirement of a bona fide negotiation. It provides that the offer must include "[a]n offer in writing by the condemnor to the prospective condemnee . . . setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules." State by Commissioner of Transportation v. Carroll, 123 N.J. 308, 323 (1991) (citing N.J.S.A. 20:3-6). In addition, this Court has determined that the "one-price" offer method must be used, which requires "an initial full price offer . . . to prevent the State from making low offers to gain a bargaining advantage . . . ." Id. at 318. When the property owner rejects the condemning authority's offer, the condemning authority may have an obligation to continue to discuss the offering price when the response provides credible information supporting its opinion that the offer is too low. County of Morris v. Weiner, 222 N.J. Super. 560, 565 (App. Div.), certif. denied, 111 N.J. 573 (1988). (pp. 20-22)

4. Applying these principles, LB's status as the holder of a final judgment of foreclosure did not require the Borough to present an offer to it and negotiate with it. Although L.B. anticipated a Sheriff's Sale within weeks of the Borough's pre-taking offer to Malik, L.B.'s judgment could have been satisfied by Malik at any time. Even after the Sheriff's Sale, Malik had a right to redeem. Malik's apparent inability or lack of desire to exercise that right did not elevate the nature of LB's interest in the Property to "holding the title of record to the property" under N.J.S.A. 20:3-6. N.J.S.A. 20:3-6 does not recognize real parties in interest or those more concerned about the state of the subject property than the title holder of record. (pp. 22-24)

5. The Court's holding that N.J.S.A. 20:3-6 limits negotiations to the record titleholder leads to the inexorable conclusion that LB lacks standing to challenge the bona fides of the negotiation between the Borough and Malik. Nevertheless, for the sake of completeness, the Court addresses this issue. At a minimum, the Borough was required to retain an appraiser to prepare an appraisal of the Property, to use a one-price offer method to formulate its offer, and to extend the offer accompanied by the appraisal report to the Property owner. The Borough satisfied those requirements. Although a condemnor must respond to an invitation to engage in further discussions about the offering price when that invitation is supported by concrete and credible evidence of value, Malik failed to provide such evidence. Rather, it simply noted that any compensation less than the amount required to satisfy its lenders was not acceptable. Under those circumstances, the Court cannot conclude that the Borough breached its duty to engage in bona fide negotiations with Malik. (pp. 24-25)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA and ALBIN and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion. JUSTICES PATTERSON and FERNANDEZ-VINA did not participate.**

BOROUGH OF MERCHANTVILLE,

    Plaintiff-Respondent,

        v.

MALIK & SON, LLC  and/or
SHAUKAT MALIK and/or BOBBY
MALIK, WELLWOOD REALTY, LP,
UBS PRINCIPAL FINANCE, LLC,
LASALLE BANK NATIONAL
ASSOCIATION, LB-UBS
COMMERCIAL MORTGAGE TRUST,
BANK OF AMERICA, GERMAN
AMERICAN CAPITAL CORPORATION
(a MARYLAND CORPORATION),
DAWN-BV, LLC, LB-UBS 2000-C3
WELLWOOD MANOR, LLC, WACHOVIA
BANK, NA, TAX LIEN SERVICE
GROUP, CAMDEN COUNTY
MUNICIPAL UTILITIES
AUTHORITY, and THE
MERCHANTVILLE PENNSAUKEN
WATER COMMISSION,

    Defendants,

        and

LB-RPR REO HOLDINGS, LLC,

    Defendant-Appellant,

        and

U.S. BANK, AS CUSTODIAN FOR
CRESTAR CAPITAL, LLC,

    Defendant-Respondent.

Argued April 1, 2014 – Decided August 7, 2014

On certification to the Superior Court, Appellate Division, whose opinion is reported at 429 N.J. Super. 416 (2013).

Stuart M. Lederman argued the cause for appellant (Riker Danzig Scherer Hyland & Perretti, attorneys; Mr. Lederman and Rudy S. Randazzo, on the briefs).

Timothy J. Higgins argued the cause for respondent Borough of Merchantville.

Adam D. Greenberg submitted a letter in lieu of brief on behalf of respondent U.S. Bank, as custodian for Crestar Capital, LLC (Honig & Greenberg, attorneys).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

In this appeal, the Court must determine whether N.J.S.A. 20:3-6 requires a condemning authority to engage in bona fide negotiations with a mortgage holder that has obtained a final judgment of foreclosure for the property sought to be condemned. In this case, the condemning authority initiated eminent domain proceedings after the property owner rejected its offer to acquire the property, just days before the holder of the foreclosure judgment expected the property to be sold at a Sheriff's Sale. The judgment holder contended it was the real party in interest, and that the condemning authority had an obligation to negotiate with it rather than the property owner prior to initiating condemnation proceedings.

The trial court concluded that the condemning authority had properly submitted the offer to the owner of record, and the subsequent rejection of the offer satisfied the statutory requirement of bona fide negotiations prior to the exercise of eminent domain authority. The trial court also determined that the condemning authority had no obligation to advise the foreclosure judgment holder of its intention to condemn or to engage in bona fide negotiations with it. In a reported decision, the Appellate Division affirmed.

We hold that a condemning authority has an obligation to present an offer to acquire property and to engage in bona fide negotiations with no party other than the individual or entity that holds title to the property or the holder of the interest sought to be condemned. In addition, we determine that the offer presented in this case and the reply by the property owner satisfied the statutory requirement of bona fide negotiations with the property owner before initiating condemnation proceedings. We therefore affirm the judgment of the Appellate Division.

I.

A.

Malik & Son, LLC (Malik) owned property commonly known as 606 West Maple Avenue, and referred to as Block 9, Lots 2 and 3 (the Property) on the municipal tax map in the Borough of

3

Merchantville (Borough), Camden County. The Property contains a fifty-four unit apartment building and had been designated by the Borough as an area in need of redevelopment.[1] Malik assumed a mortgage loan issued by LB-RPR REO Holdings, LLC's (LB) predecessor, and defaulted on the loan. LB's predecessor in interest filed a complaint to foreclose the mortgage, and Malik did not file an answer. On February 28, 2011, the court entered a final judgment of foreclosure. LB's predecessor in interest transferred all its rights and interest in the Property to LB the next day.

LB is a redeveloper of distressed properties. Once it acquired the loan, LB had a receiver appointed for the Property and made substantial repairs to the building. In an effort to protect its interest in the Property, LB sought, and the court entered, an order that directed that Malik could not sell the Property without the express approval of the sale price by LB.

Throughout 2010 and 2011, the Borough pursued a plan to redevelop the Property. Following designation of the Property as an area in need of redevelopment, the Planning Board prepared

---

[1] The Planning Board found that the building on the Property was "substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess[ed] any of such characteristics," N.J.S.A. 40A:12A-5(a); that the characteristics described in subsection 5(a) "are detrimental to the safety, health, morals, or welfare of the surrounding area or community," N.J.S.A. 40A:12A-5(d); and that redevelopment was "consistent with smart growth planning principles adopted pursuant to law or regulation," N.J.S.A. 40A:12A-5(h).

a proposed redevelopment plan for the Property and adopted a resolution recommending that plan to the Mayor and Council. On September 26, 2011, the Borough designated Citadel Wellwood, LLC (Citadel) as the redeveloper of the Property, and adopted the redevelopment and rehabilitation plan for the Property.

As the Borough considered a redevelopment plan for the Property, Malik listed it for sale. On February 14, 2011, months before Citadel was designated as the redeveloper of the Property, Citadel entered a contract to purchase it for $1,250,000. Richard DePetro, the principal of Citadel, cancelled the contract on June 24, 2011, after seeking a $200,000 reduction in the purchase price due to the deteriorated condition of the building. Malik rejected the offer, citing the amount due on the LB mortgage. Prior to cancelling the contract, Citadel contacted LB and offered to purchase the Property for $1,250,000 if LB agreed to a short sale to permit satisfaction of other liens. In the course of those discussions, DePetro mentioned to LB's representative that the Borough would probably condemn the Property. In June 2011, in response to an inquiry from an LB representative, the Borough denied any intention to condemn the Property.

However, once the Borough adopted the redevelopment plan on September 26, 2011, the Borough engaged an appraiser to ascertain the fair market value of the Property. The appraiser

5

opined that as of August 24, 2011, its fair market value was $0. He calculated that value because the cost to renovate the Property far exceeded its market value following renovation and rehabilitation. The appraiser also assigned a fair market value of $270,000 without renovations.

In a letter dated November 11, 2011, the Borough offered Malik $270,000 for the Property. The Borough explained that the offer reflected the pre-renovation fair market value of the Property. The Borough enclosed the appraisal and a facility assessment evaluation. The Borough informed Malik that it would assume "that [Malik] [does] not accept this current offer and [does] not wish to proceed with further negotiations with the Borough," if Malik did not respond by November 28, 2011. In a letter dated November 23, 2011, Malik's attorney replied that "the amount offered by [the Borough was] far less than [Malik] owes [its lender]. Therefore, [Malik] cannot accept [the Borough's] offer as [Malik] would not be in a position to provide clear title to the same." Malik's attorney stated the letter should be considered as "formal notification" of his client's rejection of the offer, but invited further discussion about "more reasonable compensation in an amount which would satisfy all liens and encumbrances on the [P]roperty."

That same date, LB's attorney contacted the Borough. In an email, citing its discussion in June, LB expressed its surprise

6

that the Borough intended to condemn the Property and noted that the Borough's offer was far less than the price offered by Citadel in June 2011. LB's attorney informed the Borough that it had obtained a final judgment of foreclosure and that the Property was scheduled to be sold at Sheriff's Sale on December 7, 2011. Noting that it would soon own the Property, LB expressed its desire to meet with the Borough to discuss reasonable compensation for the Property.

B.

The Borough filed a declaration of taking and verified complaint in condemnation on December 5, 2011. The Borough deposited $270,000 with the Clerk of the Superior Court. In response to the Order to Show Cause entered by the trial court, LB filed a motion to dismiss the complaint.

In its motion, LB argued that the Borough had failed to engage in bona fide negotiations with Malik and it. LB also contended that the Borough was bound by the earlier offer of Citadel, its later-designated redeveloper, and that the Borough had failed to honor its obligation to deal candidly and fairly with LB. Holding that the Borough had no obligation to negotiate with LB and that the Borough had discharged its obligation to engage in bona fide negotiations with the Property owner prior to initiating condemnation proceedings, the trial court filed an order for final judgment and appointed a panel of

7

commissioners to examine and appraise the Property and to fix the compensation to be paid by the Borough.

In its appeal to the Appellate Division, LB argued that the trial court erred in finding that the Borough had satisfied its statutory pre-taking obligation to engage in bona fide negotiations with Malik, that the Borough had a duty to engage in direct negotiations with it as the real party in interest, and that the Borough had failed to treat "the condemnees with absolute candor and fairness." LB contended that the trial court failed to recognize that the offered compensation was grounded in a patently deficient appraisal, and that the Borough used the designated redeveloper to circumvent the protections provided to condemnees by statute.

The Borough responded that it had a duty to negotiate only with the individual or entity holding the title of record, that it had satisfied its statutory obligation to negotiate in good faith with Malik, and that the formulation of its offer was consistent with law. Finally, the Borough argued that LB's contention about the Borough's lack of candor or "sleight-of-hand" did not undermine the Borough's authority to take the Property or the good faith of its offer and negotiations with

Malik.  It suggested that, at most, those arguments might be relevant to the appropriate date of valuation.[2]

In a reported opinion, the Appellate Division affirmed. Borough of Merchantville v. Malik & Son, LLC, 429 N.J. Super. 416 (App. Div. 2013).  It held that the Borough did not have a duty to negotiate the offer of just compensation for the Property with LB.  Id. at 428.  The appellate panel noted that N.J.S.A. 20:3-6 requires the condemning authority to negotiate only with the individual or entity holding the title of record to the property to be condemned, or, when the fee is not at issue, with the holder of an interest sought to be condemned, such as a leaseholder.  Ibid. (citing Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 407 (2011)).  The panel observed that limiting the duty to negotiate only with the title holder of record still protects the interests of condemnees with a compensable interest because they are permitted to participate in subsequent valuation and allocation proceedings.  Id. at 429.

The appellate court determined that the Borough had provided the appraisal report to Malik, that it was prepared in accordance with professional standards, and that the report provided a clear description of the Property, a clear

---

[2] Crestar Capital, LLC, the holder of a tax lien certification against the Malik Property, had filed a motion to disburse the funds on deposit with the trial court.  It took no position on the merits of the appeal.

description of the valuation approach chosen, and a clear explanation of the fair market value of the Property.  Id. at 429.  The Appellate Division also concluded that the Borough had no obligation to respond to Malik's November 23, 2011 letter and that the initiation of condemnation proceedings shortly after Malik rejected the Borough's offer did not evince a lack of good faith by the Borough.  Id. at 434.  The panel concluded that "the Borough dealt 'forthrightly and fairly' in its negotiations with Malik and satisfied its obligations to 'turn square corners.'"  Id. at 433 (quoting F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985)).  We granted LB's petition for certification.  214 N.J. 117 (2013).

## II.

LB reiterates its arguments presented in the trial court and Appellate Division.  It maintains that the Eminent Domain Act, specifically N.J.S.A. 20:3-6, requires a condemning authority to engage in bona fide negotiations not only with the title holder of record but also with the holder of a final judgment of foreclosure, particularly when that party has obtained an order from the court requiring the judgment holder's approval of any sale of the property and when the condemning authority has received notice that a Sheriff's Sale has been scheduled.  LB maintains that the appellate opinion questions its right to contest the taking because it implies that "a non-

10

title owner condemnee does not benefit from the bona fide negotiations requirement and therefore does not have standing to complain when a condemnor fails to negotiate."

LB also contends that the failure of the Borough to respond to Malik's letter rejecting its offer but inviting a higher offer breached the condemning authority's duty of candor and fairness to owners of property targeted for condemnation. By declaring that Malik's letter did not trigger the need for further negotiations, LB asserts that the Appellate Division placed "a substantial burden on condemnees to use very specific and special language when responding to condemnation offers or else lose the opportunity to enjoy the bona fide negotiations that New Jersey considers essential to a true award of just compensation." It maintains that the Appellate Division opinion on this issue is in direct conflict with County of Morris v. Weiner, 222 N.J. Super. 560 (App. Div.), certif. denied, 111 N.J. 573 (1988), and misconstrues State by Commissioner of Transportation v. Carroll, 123 N.J. 308 (1991).

The Borough responds that LB misstates the issue. It contends the issue in this appeal is with whom the Borough owed a duty to negotiate before initiating a condemnation proceeding, not whether the Borough engaged in bona fide negotiations prior to initiating the condemnation proceeding. The Borough urges that the Appellate Division correctly determined that it was

11

obliged to tender a good faith offer supported by an appropriate appraisal to Malik, the owner of record of the Property, that LB was not the record owner of the Property, and that it engaged in bona fide negotiations with Malik.

III.

The principal issue presented in this appeal, the party with which a condemning authority must negotiate prior to commencing a condemnation proceeding, requires an understanding of the nature of the interest acquired by a holder of a final judgment of foreclosure and the interest retained by the owner of record following entry of that order and until a Sheriff's Sale. We commence our discussion with a brief review of the post-judgment mortgage foreclosure process followed by an examination of the condemnation process and the obligations imposed on the condemning authority.

A.

The initiation of foreclosure proceedings does not extinguish the mortgagor's interest in the encumbered property. The mortgagor has the right to satisfy the debt at any time before entry of judgment and thereafter under certain circumstances. This right is referred to as the right to redeem or the right of redemption.

The right to redeem is the right of a mortgagor to reassert complete fee simple ownership of his property by paying the

12

complete debt and any other charges assessed under the terms of the mortgage or under statutory provision.  55 Am. Jur. 2d Mortgages § 787 (2009).  The right of redemption evolved as a right of the debtor in equity to prevent the loss of the property at any time before the judgment of foreclosure.  Carteret Sav. & Loan Ass'n v. Davis, 105 N.J. 344, 347 (1987).  In many states, a further statutory right of redemption exists following the Sheriff's Sale of a property to further protect mortgagees, however this is not the case in New Jersey.[3]

Instead, it has been the settled law in this State that an owner-mortgagor has a right to redeem the mortgaged property following foreclosure and Sheriff's Sale, by the payment in full of the mortgage indebtedness, costs of foreclosure, and costs of sale.  Hardyston Nat'l Bank v. Tartamella, 56 N.J. 508, 513 (1970).  Under Hardyston, the right must be exercised "within the ten-day period fixed by [Rule] 4:65-5 for objections to the [foreclosure] sale and until an order confirming the sale if objections are filed under the rule."  Ibid.  If an objection to the sale is filed, the right to redeem continues until the disposition of the filed objections.  Brookshire Equities, LLC

---

[3] There is no statutory right of redemption of a mortgage in New Jersey other than the right of redemption given to persons against whom a deficiency judgment is entered for a period of six months following the deficiency judgment.  N.J.S.A. 2A:50-4.

13

v. Montaquiza, 346 N.J. Super. 310, 316 (App. Div.), certif. denied, 172 N.J. 179 (2002).

"This right of redemption confirmed in Hardyston is not fashioned by nor dependent upon statute; instead, it is a right created and devised by equity to protect a mortgagor from the forfeiture of his title." Lobsenz v. Micucci Holdings, Inc., 127 N.J. Super. 50, 52 (App. Div. 1974) (internal quotation marks omitted). This right is of such utmost importance that our laws do not permit it to be waived in a mortgage instrument or in a contemporaneous agreement. Hardyston, supra, 56 N.J. at 513 (citing Dorman v. Fisher, 31 N.J. 13, 15 (1959)). This right "is a valuable right . . . subject to transfer and conveyance[,] just as is any other right, title or interest in or to real property." Lobsenz, supra, 127 N.J. Super. at 52. "A purchaser at the foreclosure sale bids and buys with actual or implied knowledge of this existence of the right to redeem and with full awareness that his purchase is subject to being defeated by the timely exercise thereof." Id. at 55. Indeed, this Court has recognized the situations are probably rare in which a mortgagor can profitably assert a right to redeem after the Sheriff's Sale, but "the right should be his unless some public interest would be significantly offended." Hardyston, supra, 56 N.J. at 513.

B.

14

Eminent domain involves the taking of private property, and "'has always been subject to constitutional limits.'" Kearny, supra, 205 N.J. at 399 (quoting Harrison Dev. Agency v. DeRose, 398 N.J. Super. 361, 391 (App. Div. 2008)). The eminent domain clause of the New Jersey Constitution provides that

> [p]rivate property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners.
>
> [N.J. Const. art. I, ¶ 20.]

The Court has explained that this clause

> imposes three significant limitations on the State's eminent domain power. First, the State must pay "just compensation" for property taken by eminent domain. Second, no person may be deprived of property without due process of law. Third, . . . the State may take private property only for public use.
>
> [Gallenthin Realty Dev. v. Borough of Paulsboro, 191 N.J. 344, 356 (2007).]

The New Jersey Constitution also addresses property that has been declared blighted and in need of redevelopment:

> The clearance, replanning, development or redevelopment of blighted areas shall be a public purpose and public use, for which private property may be taken or acquired. Municipal, public or private corporations may be authorized by law to undertake such clearance, replanning, development or redevelopment; and improvements made for these purposes and uses, or for any of them, may be exempted from taxation, in whole or

15

> in part, for a limited period of time . . .
> . The conditions of use, ownership,
> management and control of such improvements
> shall be regulated by law.

> [N.J. Const. art. VIII, § 3, ¶ 1.]

Pursuant to this provision, a municipality may exercise its eminent domain power if it adheres to the governing constitutional provisions and any applicable statutory provisions. See Gallenthin, supra, 191 N.J. at 359 (noting "clause operates as both a grant and limit on the State's redevelopment authority").

The Eminent Domain Act (Act), N.J.S.A. 20:3-1 to -47, governs the taking of private property for public use. The Act requires that private property may not be taken for a public purpose unless the condemning authority has engaged in bona fide negotiations to purchase the property with the party holding title to the property. N.J.S.A. 20:3-6 provides in pertinent part,

> [w]henever any condemnor shall have
> determined to acquire property pursuant to
> law . . . no action to condemn shall be
> instituted unless the condemnor is unable to
> acquire such title or possession through
> bona fide negotiations with the prospective
> condemnee, which negotiations shall include
> an offer in writing by the condemnor to the
> prospective condemnee holding the title of
> record to the property being condemned,
> setting forth the property and interest
> therein to be acquired, the compensation
> offered to be paid and a reasonable
> disclosure of the manner in which the amount

16

> of such offered compensation has been calculated, and such other matters as may be required by the rules. (Emphasis added.)

Furthermore, N.J.S.A. 20:3-2(c) defines condemnee as "the owner of the interest in the private property being condemned for a public purpose under the power of eminent domain."

To determine whether the Legislature intended to enlarge the circle of parties with whom a condemning authority must negotiate beyond "the condemnee holding the title of record to the property being condemned" as required by N.J.S.A. 20:3-6, we start with the plain language of the statute. N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 20 (2013); DiProspero v. Penn, 183 N.J. 477, 492 (2005). If the plain language of the statute is clear and susceptible to only one interpretation, then the court should apply that plain language interpretation. A.L., supra, 213 N.J. at 20; DiProspero, supra, 183 N.J. at 492; see also 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 46.1 at 137-41 (7th ed. 2007) ("[W]hen the language of the statute is clear and not unreasonable or illogical in its operation, the court may not go outside the statute to give it a different meaning.")

The plain language of N.J.S.A. 20:3-6 directs that the condemning authority is required to negotiate with the party holding the title of record it seeks to acquire. Moreover, N.J.S.A. 20:3-2(c) defines a condemnee "as the owner of the

17

interest in the private property being condemned."  This language has been interpreted to mean exactly what it says, that is, the condemning authority has the obligation to negotiate only with the title holder of record when it seeks to acquire the fee interest.  City of Atl. City v. Cynwyd Invs., 148 N.J. 55, 70 (1997).

Justice O'Hern explained the rationale for this limitation:

> Under the [Act], the negotiations are to be undertaken with the condemnee who holds title of record to the property. Given the breadth of the term "condemnee," the limitation in Section 6 on the "condemnee" with whom the condemnor must negotiate to the "condemnee who holds title of record" avoids the difficult requirement of negotiating with each condemnee having an interest in the property . . . . The rights of all other condemnees with a compensable interest are better protected by allowing them to participate later during the Commissioner's hearing, where value is determined, N.J.S.A. 20:3-12, and during the still subsequent proceeding when the compensation is allocated.  N.J.S.A. 20:3-34; Rule 4:73-9.

[Id. at 70-71.]

Applying this rationale in Cynwyd, the Court rejected the contention that a lessee of property under a ninety-nine year lease would be considered equivalent to a holder of a fee simple in condemnation proceedings.  Id. at 72.  The Court explained that generally the rights of the holder of such a lengthy lease depend on the contract.  Ibid.  Identifying the nature and

18

extent of the rights held by the holder of a ninety-nine year lease might burden the pre-condemnation appraisal and bona fide negotiation process and counselled against recognizing this interest as one that triggered the duty to negotiate. Ibid.

To be sure, a condemning authority may condemn less than a fee simple interest. The very language of N.J.S.A. 20:3-6 requiring the condemnor to identify the property and the interest to be taken recognizes this principle. This Court recognized the authority of a condemning authority to take less than a fee simple interest in Kearny. There, the town never took any action, formal or informal, to acquire the fee simple interest. Kearny, supra, 205 N.J. at 408. The only interest sought to be acquired was a leasehold and, under those circumstances, the condemning authority was required to conduct bona fide negotiations with the leaseholder. Ibid. Notably, the Court reaffirmed the rule that "where a fee simple is being condemned, negotiations will take place with the fee owner alone." Id. at 407.

This limitation to the title holder of record is consistent with generally recognized and applied principles throughout the country. One of these basic principles is that the owner of the property at the time of taking is the party entitled to compensation. Nichols on Eminent Domain, Ch. 5, § 5.01[5][d] (Matthew Bender, 3d ed.). Another basic principle is that the

19

duty to negotiate extends only to the owner of the property to be taken.  Id. at Ch. 24, § 24.13(2).  Indeed, in a case preceding the 1971 enactment of the Act, the Supreme Court held that a condemning authority had no obligation to negotiate with or seek the consent of the mortgagee of property to be taken to erect poles and wires.  Coles v. Midland Tel. & Tel. Co., 67 N.J.L. 490, 493 (Sup. Ct.), aff'd, 68 N.J.L. 413 (E. & A. 1902).

C.

The Act does not define what is necessary to meet the statutory requirements of a bona fide negotiation.  Carroll, supra, 123 N.J. at 316.  Instead, it provides that the offer must include

> [a]n offer in writing by the condemnor to the prospective condemnee . . . setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules.
>
> [Ibid. (citing N.J.S.A. 20:3-6).]

In Cynwyd, supra, this Court emphasized that the uniform procedures prescribed by the Act are designed to protect the citizen whose property is condemned.  148 N.J. at 68.

In furtherance of this policy, the condemning authority must identify any appraisals used and its valuation methodology. Carroll, supra, 123 N.J. at 323.  The lens by which the

20

condemning authority views the offer must be from the perspective of what the condemnee will lose, not what the condemnor may gain. Casino Reinvestment Dev. Auth. v. Katz, 334 N.J. Super. 473, 484-86 (Law Div. 2000). Thus, the offer should place the condemnee "in as good a position monetarily as the owner would have occupied had the property not been taken." Id. at 485.

To ensure that the condemnee receives the constitutionally required just compensation, this Court has approved the "one-price" offer method. Carroll, supra, 123 N.J. at 318. We explained that

> [t]he objective of requiring an initial full price offer is to prevent the State from making low offers to gain a bargaining advantage, forcing owners into adversarial positions in order to secure the full market values of their properties . . . . Indeed, the whole thrust of the eminent-domain process is that the State should operate differently from an open-market, arms-length buyer.
>
> [Id. at 318-19.]

The condemning authority's obligation to conduct good faith negotiations does not end with making an offer and furnishing the appraisal on which the offer was formulated. Weiner, supra, 222 N.J. Super. at 565. Rather, even when the property owner rejects the offer, the condemning authority may have an obligation to continue to discuss the offering price when the

21

response provides credible information supporting its opinion that the offer is too low and invites "further discussion based on a reasonable expectation that [the condemning authority] would take a more 'realistic' view of the property's worth." Id. at 565.

On the other hand, the condemning authority's duty to negotiate "can be tempered by a property owner's failure to cooperate." Carroll, supra, 123 N.J. at 323. In Carroll, the property owner met with the condemning authority's negotiator but insisted that the offer was too low, continuously maintained that position, and stated that "the matter would have to be resolved by the courts." Id. at 322. Under those circumstances, the condemning authority satisfied its obligation to negotiate in good faith with the property owner. Id. at 323. Although the duty to continue negotiations does not cease simply because the positions of the parties on the issue of value are widely disparate, the condemning authority has no obligation to continue to negotiate if the other party refuses to do so. Cnty. of Monmouth v. Whispering Woods, 222 N.J. Super. 1, 9 (App. Div. 1987), certif. denied, 110 N.J. 175 (1989).

IV.

Applying these principles to the issues presented by LB, we conclude that its status as the holder of a final judgment of foreclosure did not require the Borough to present an offer to

22

it and negotiate with it. Moreover, the negotiations between the Borough and Malik satisfied the obligation to conduct bona fide negotiations with the Property owner.

LB is in the business of redeveloping distressed properties. The record suggests that the Property owned by Malik satisfied its business plan as a property that would be desirable to own, renovate, operate, or sell, presumably for a profit. Certainly, it was interested in the Property, but it did not hold an interest in the Property that qualified it to be consulted before the Borough proceeded with its redevelopment plan.

To be sure, LB had made substantial progress in achieving its business plan. It held a final judgment of foreclosure and anticipated a Sheriff's Sale within weeks of the date the Borough presented its pre-taking offer to Malik. LB, however, held a judgment that could have been satisfied by Malik at any time. Even after the Sheriff's Sale, Malik had a right to redeem. Malik's apparent inability or lack of desire to exercise that right did not elevate the nature of LB's interest in the Property to "holding the title of record to the property" as required by statute.

Furthermore, the plain language of the Act, specifically N.J.S.A. 20:3-6, limits negotiations to the title owner of record. The Act does not recognize real parties in interest or

23

those with more interest and concern about the state of the property than the title holder of record. This Court has written extensively about the wisdom of limiting the parties with whom the condemning authorities must negotiate. Cynwyd, supra, 148 N.J. at 70-71. The Court has also observed that an interested party other than the title holder is not without recourse because the eminent domain scheme protects those with compensable interests. Kearny, supra, 205 N.J. at 407; Cynwyd, supra, 148 N.J. at 70-71.

The Appellate Division assumed, but did not decide, that LB had standing to challenge the bona fides of the negotiation process between the Borough and Malik. Merchantville, supra, 429 N.J. Super. at 429. We infer that the Appellate Division questioned LB's standing to pursue this argument, as do we. Indeed, our holding that N.J.S.A. 20:3-6 limits negotiations to the record titleholder and the existence of other forums to contest the value assigned by the Borough to the Property leads to the inexorable conclusion that LB lacks standing to pursue this issue. Nevertheless, for the sake of completeness, we have addressed the issue.

As noted in Whispering Woods, supra, we must approach, with a touch of realism, the evaluation of the efforts made by the condemning authority to engage in good faith negotiations with the Property owner. 222 N.J. Super. at 9. At a minimum, the

24

Borough was required to retain an appraiser to prepare an appraisal of the Property, to use a one-price offer method to formulate its offer, and to extend the offer accompanied by the appraisal report to the Property owner.  Weiner, supra, 222 N.J. Super. at 564.  The Borough satisfied those requirements.

A condemnor must also respond to an invitation to engage in further discussions about the offering price when that invitation is supported by concrete and credible evidence of value.  Id. at 565; see Carroll, supra, 123 N.J. at 323 (discussing circumstances when no further discussions required).  Here, Malik offered no such evidence of value.  Rather, the Property owner simply noted that any compensation less than the amount required to satisfy LB and other lienholders would be of no benefit to him, and provided no evidence that the amount of the liens even approximated the fair market value of the Property.  Although Malik could not be considered intransigent, he was realistic about his situation.  Under those circumstances, we cannot conclude that the Borough breached its duty to engage in bona fide negotiations by failing to engage in further discussion about the amount of its offer.

V.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and ALBIN, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's

25

opinion.  JUSTICES PATTERSON and FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-66                                        SEPTEMBER TERM 2012

ON CERTIFICATION TO        Appellate Division, Superior Court

BOROUGH OF MERCHANTVILLE,
        Plaintiff-Respondent,

                    v.

MALIK & SON, LLC and/or
SHAUKAT MALIK and/or BOBBY
MALIK, WELLWOOD REALTY, LP,
UBS PRINCIPAL FINANCE, LLC,
LASALLE BANK NATIONAL
ASSOCIATION, LB-UBS
COMMERCIAL MORTGAGE TRUST,
BANK OF AMERICA, GERMAN
AMERICAN CAPITAL CORPORATION
(a MARYLAND CORPORATION),
DAWN-BV, LLC, LB-UBS 2000-C3
WELLWOOD MANOR, LLC, WACHOVIA
BANK, NA, TAX LIEN SERVICE
GROUP, CAMDEN COUNTY
MUNICIPAL UTILITIES
AUTHORITY, and THE
MERCHANTVILLE PENNSAUKEN
WATER COMMISSION,
        Defendants,

                and

LB-RPR REO HOLDINGS, LLC,
        Defendant-Appellant,

                and

U.S. BANK, AS CUSTODIAN FOR
CRESTAR CAPITAL, LLC,
        Defendant-Respondent.

DECIDED            August 7, 2014

                    Chief Justice Rabner                        PRESIDING

OPINION BY            Judge Cuff

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | --------------------------- | --------------------- |
| JUSTICE FERNANDEZ-VINA | --------------------------- | --------------------- |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |

1