**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1803-19

RIALTO-CAPITOL
CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff-Respondent,

v.

SANDI KWON,

      Defendant/Third-Party
      Plaintiff-Appellant,

v.

JP MORGAN CHASE BANK,
NATIONAL ASSOCIATION,
CITIBANK, N.A., NOT IN ITS
INDIVIDUAL CAPACITY, BUT
SOLELY AS TRUSTEE OF NRZ
PASS-THROUGH TRUST VI,
NRZ PASS-THROUGH TRUST
V, and U.S. BANK NATIONAL
ASSOCIATION,

      Third-Party Defendants.

_____

Submitted January 25, 2021 – Decided May 5, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0308-19.

Bakmazian & Associates, LLC, attorneys for appellant (Aram Ingilian, on the briefs).

Stark & Stark, P.C., and Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., attorneys for respondent (Joseph H. Lemkin, of counsel and on the brief; Christian M. Scheuerman and Jonathan R. Stuckel, on the brief).

PER CURIAM

Defendant Sandi Kwon appeals the November 22, 2019 orders that granted summary judgment to plaintiff Rialto-Capitol Condominium Association, Inc., entering a judgment against defendant for unpaid maintenance and late fees, interest and attorney's fees of $49,581.05, and dismissing defendant's counterclaims with prejudice. Defendant also appeals the March 29, 2019 order that partly denied her motion under Rule 4:6-2 to dismiss the complaint. For reasons that follow, we affirm the orders.

I.

Plaintiff is a condominium association established under the New Jersey Condominium Act, N.J.S.A. 46:8B-1 to -38. Defendant owned a condominium unit within plaintiff's association. On January 22, 2019, plaintiff filed a

2

complaint against defendant in the Law Division for payment of unpaid maintenance expenses (association fees), late fees and attorney's fees. It alleged defendant filed for bankruptcy on July 26, 2016, under Chapter Seven and obtained a discharge on October 28, 2016. Because defendant "continue[d] to hold legal title to the [u]nit," plaintiff requested a judgment for "post-petition" unpaid association fees, late fees, and interest totaling $43,624.53, plus attorney's fees of $4818.68.

The affidavit of service reported the summons and complaint were successfully served on February 4, 2019 at 6:05 p.m., by delivering a copy to defendant personally. The affidavit listed defendant's physical description on the standard form.

Defendant filed a motion to dismiss instead of an answer, requesting costs and attorney's fees for frivolous litigation. Defendant made three arguments.[1] First, the unit was subject to a foreclosure action starting in 2015, and defendant claimed this relieved her of ownership of the unit and her obligation to pay association fees. Second, defendant obtained a discharge in bankruptcy on October 28, 2016, which also relieved her of ownership and responsibility for

---

[1] Defendant did not include her supporting certifications in the appendix. This information was included in plaintiff's opposing certification.

paying association fees. Third, defendant argued the complaint was not properly served. Defendant's attorney (and husband) certified[2] he came home from work about 5:45 p.m. Based on the contact card that was left, he went on the N.J. Judiciary e-courts to obtain a copy of the pleadings. Defendant certified[3] she picked up their child from daycare at 5:48 p.m. but was not home when the process server claimed to be there at 6:05 p.m. She denied seeing the process server.

Plaintiff opposed the motion. Plaintiff clarified the complaint requested post-petition association fees only, which were fees incurred from August 1, 2016, after the bankruptcy petition was filed, to February 28, 2019, when the unit was sold at a sheriff's sale. Plaintiff's counsel certified that title searches for the unit showed defendant held legal title to the property in 2017 and 2018. Furthermore, defendant listed the unit as part of her property when she filed her first set of schedules in bankruptcy court. Although defendant did not list the unit in her subsequent September 7, 2016 filing, the foreclosing bank, U.S. Bank of America, nonetheless requested relief from the automatic stay because of

---

[2] This information is based on a certification from plaintiff's counsel; defendant's counsel's certification was not included in the appendix.

[3] Defendant's certification was not included in the appendix; this information is in a certification from plaintiff's counsel.

A-1803-19

defendant's interest in the property. 11 U.S.C. §362. The order was granted on October 17, 2016, allowing the foreclosure to proceed. A final judgment of foreclosure was entered on December 7, 2018. The unit was sold at a sheriff's sale on February 28, 2019.

Plaintiff submitted additional information about service. A second affidavit of service reported that service was attempted on January 26, 2019, January 28, 2019, and January 31, 2019, but was not successful. Contact cards were left at the property on three occasions. On January 31, 2019, the lights were on. The affidavit of service stated that on February 4, 2019, there was a black car in the driveway with cameras "all over the property." The female who answered the door was told the server had legal documents for "Sandi Kwon" and "the female said '[y]es' and took the documents in hand."

On March 29, 2019, the trial court granted plaintiff's motion to dismiss in part and denied it in part. The court ruled plaintiff's claim for fees was limited to the period from July 26, 2016, when the bankruptcy petition was filed, to February 28, 2019, when the property was sold at sheriff's sale, because that was when defendant's equitable right to redeem the property expired. The court found there was "a genuine issue of material fact as to whether the [d]efendant

5

was served properly with the complaint." However, the court recognized there was a presumption that service was proper given the affidavit of service.

It is clear from the transcript that the court did not have a copy of defendant's reply brief on the return date of the motion to dismiss. After the court's ruling and in response to defense counsel's question, the court offered to read the brief, but counsel said "[n]o. That's okay . . . it pretty much rehashes and emphasizes the prior points. I don't think it really raises anything new."

Defendant filed an answer to the complaint after her motion to dismiss was denied. It included multiple counterclaims and a third-party complaint against J.P. Morgan Chase Bank, N.A., Citibank, N.A. as Trustee of NRZ Pass-Through Trust VI, NRZ Pass-Through Trust V, U.S. Bank National Association.

In September 2019, plaintiff filed a motion for summary judgment as to defendant. Shortly after that, a separate motion for summary judgment to dismiss the counterclaims was filed by counsel representing Rialto-Capitol Condominium Association, Inc. on the counterclaims. The summary judgment motions were filed before the end of the discovery period.

In support of the motions, defendant's property manager, Adam Holland, certified that defendant owed plaintiff $49,581.05. He explained that unit owners were responsible under the Master Deed and By-Laws to pay the

expenses and costs for operating the association. The association also was authorized to assess reasonable attorney's fees. Holland certified defendant received notice about the amounts due but defaulted on her obligations.

Holland alleged that title searches conducted in 2017 and 2018 showed defendant held legal title to the unit even though she obtained a discharge in bankruptcy on October 28, 2016. He noted that under the bankruptcy code, defendant was not discharged from post-petition debts if she had a legal, equitable or possessory ownership interest in the unit.

Defendant opposed the motions for summary judgment. In her certification, defendant admitted she previously owned the condominium unit, but claimed she no longer had a legal, equitable or possessory interest in the unit because she surrendered it in bankruptcy court. She also did not oppose the foreclosure action filed in 2015. On August 3, 2016, defendant alleges she sent an email to plaintiff's assistant community manager stating she gave up her rights to the unit and was no longer the owner. She did not reside there, rent it to others or derive benefits from the unit.

Defendant amended her bankruptcy filing on September 7, 2016, after the meeting of the creditors, and no longer listed the unit in her property schedule. This gave plaintiff notice that she did not have any equity in the unit and

7

surrendered it. Defendant argued that her October 28, 2016 discharge order constituted further notice to plaintiff that defendant did not have any equity in the unit and had surrendered it.

Defendant certified she was not properly served with the complaint. She disputed the height, weight, skin color and ethnicity description in the affidavit of service. She certified she picked up her daughter at day-care at 5:48 p.m. In detail she explained all of her responsibilities before, during and after the ten-minute drive home, contending "it would have been nearly impossible for me to be at the residence at 6:05 p.m. (on February 4, 2019) . . . ." She denied receiving service.

In reply, the Association, as a defendant on the counterclaim, argued the Association could rely on the affidavit of service because there was no evidence it was aware of any of any alleged defects. The process server was an independent contractor. As an independent contractor, the process server controlled the manner in which service was done.

On October 17, 2019, prior to the return date of the summary judgment motions, defendant's counsel acknowledged service of the summons and complaint.

 A-1803-19

The trial court granted plaintiff's motions for summary judgment on November 22, 2019, entering a judgment against defendant for $49,581.05 which consisted of maintenance fees from August 2016 to February 2019, late fees, late interest, attorney's fees and costs. A second order dated November 22, 2019, granted summary judgment on the counterclaims, dismissing them with prejudice.

The trial court found that defendant's September 7, 2016 amended bankruptcy petition, did not divest her of her legal interest in the unit just because she no longer listed the property. Defendant remained the legal owner of the property until the sheriff's sale in February 2019. The trial court dismissed the counterclaims for the same reasons.

The court found there were no genuine issues of fact about the association fees charged. "There was no challenge to the actual assessment[s] themselves . . . ." The court found the attorney's fees were reasonable, considering the hours charged, the total amount billed for the services provided, the attorney's experience and training, and considering "what the market would bear." The court also considered the outcome of the motion and the amount of the assessment that was charged.

A-1803-19

On the issue of service of process, the court ruled it previously decided that issue and that ruling was the law of the case.

Defendant appealed both orders. The arguments made on appeal include as follows:

> I. THE LOWER COURT'S ORDER OF MARCH 29, 2019, ENTERED BY JUDGE D'ELIA, WAS FRAUGHT WITH SUCH SERIOUS AND HARMFUL ERRORS, RESULTING IN AN INJUSTICE, AND WARRANTING AN INTERVENTION BY THIS COURT.
>
> > A. The Lower Court committed reversible error when it, procedurally, failed to consider DEFENDANT's Letter Brief in lieu of a more-formal Brief as her Reply to the Opposition that had been filed by PLAINTIFF.
> >
> > B. The Lower Court committed reversible error when Judge D'Elia, rather than address the issues brought, and pending, before the Lower Court via DEFENDANT's Notice of Motion, sua sponte, made findings of facts, all of which were controverted, relative to issues not brought, or pending, before the Lower Court, and, sua sponte, determined issues of credibility, all of which were not within the Lower Court's province and should have been reserved for trial, to be determined by the trier of facts.
> >
> > C. The Lower Court committed reversible error by erroneously treating

10

DEFENDANT's Notice of Motion as one seeking summary judgment, applying the wrong standard upon rendering a decision thereon.

II.  BOTH OF THE LOWER COURT'S ORDERS OF NOVEMBER 22, 2019, ENTERED BY JUDGE D'ELIA, WERE FRAUGHT WITH SUCH SERIOUS AND HARMFUL ERRORS, RESULTING IN AN INJUSTICE, AND WARRANTING AN INTERVENTION BY THIS COURT.

A.  The Lower Court committed reversible error when Judge D'Elia, sua sponte, made findings of crucial facts, all of which were controverted, and should have been reserved for trial, to be made by the trier of facts, and, sua sponte, made credibility determinations, all of which were beyond the province of the Lower Court and should have been reserved for trial, to be determined by the trier of facts

B.  In light of the overwhelming number of genuine issues of material facts, all of which should have been reserved for trial, to be decided by the trier of facts, the Lower Court, nonetheless, committed reversible error by granting both Motions for Summary Judgment filed by PLAINTIFF, resulting in an injustice, and warranting an intervention by this Court.

11

## II.

### A.

Our review of a trial court's ruling on a motion to dismiss is de novo. Watson v. N.J. Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017). "A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting Rierder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). "This standard requires that 'the pleading be searched in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement.'" Ibid.

Here, the complaint is a demand for payment of association fees against a unit owner who has defaulted. The association fees are authorized by the governing documents of the condominium association. There is legal authority to collect these fees for assessments made after bankruptcy has been filed. See 11 U.S.C. § 523(a)(16). The trial court was correct not to dismiss the post-petition fees because it alleged a valid cause of action.

We do not agree with defendant's argument that the trial court applied the wrong standard in deciding defendant's motion under Rule 4:6-2. Defendant

raised three arguments in her motion to dismiss. Two issues were beyond the scope of the complaint: the foreclosure issue and the service of process issue. Under Rule 4:6-2(e), when matters outside the pleadings are relied on, the motion is to be treated as a summary judgment motion and disposed of under Rule 4:46. See Lederman v. Prudential Life Ins., 385 N.J. Super. 324, 337 (App. Div. 2006). To the extent the trial court treated defendant's motion to dismiss under the summary judgment standard, it was correct because the motion was based on matters outside of the pleadings.

We review a summary judgment order on a de novo basis, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

Using that standard, the court found that service was disputed. Plaintiff relied on the affidavits of service; defendant claims she was not served. This was enough to deny the motion.

A-1803-19

Defendant argues the case should be reversed because the judge did not review defendant's reply brief prior to ruling on defendant's motion to dismiss. Rule 1:6-7 provides that "[i]nsofar as possible judges shall read moving papers and briefs in advance of the hearing . . . ." Here, it is clear from the transcript that the judge was not aware of defendant's reply brief until the day of argument. Defendant's counsel told the judge the reply brief did not add anything new to the arguments but restated the prior arguments. Defendant has yet to argue what was in the reply brief that would have made a difference in the court's ruling and why. It is possible the judge reviewed the reply brief after the argument and before he signed the order. Additionally, defendant had a second opportunity to fully address all the issues in her opposition to the summary judgment motions.

The record does not support defense counsel's argument that the judge made findings of fact and credibility decisions during the proceedings on the motion to dismiss and motions for summary judgment. Our review of the transcript does not reveal this. In any event, defendant had a full opportunity in the summary judgment motion to reargue the legal and equitable ownership issue.

A-1803-19

B.

Defendant argues the November 22, 2019 summary judgment orders should be reversed because she had no legal, equitable or other interest in the unit, having given notice of this to plaintiff on September 7, 2016, when she filed an amended petition for bankruptcy. However, our review of the record supports the trial court's conclusion there were no genuine issues of material fact precluding entry of summary judgment in this case.

Although the disposition of a case on summary judgment might await completion of discovery, if "summary judgment turns on a question of law, or if further factual development is unnecessary in light of the issues presented, then summary judgment need not be delayed." United Sav. Bank v. State, 360 N.J. Super. 520, 525 (App. Div. 2003). See Oslacky v. Borough of River Edge, 319 N.J. Super. 79, 87 (App. Div. 1999). The issue here was whether defendant still had an interest in the property after the bankruptcy petition was filed and before the property was sold at a sheriff's sale. This is a legal question.

Under the bankruptcy code, an individual debtor is not discharged from debt:

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative

corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case . . . .

[11 U.S.C. § 523(a)(16).]

This section expanded the rights of a condominium association to collect fees where a unit owner filed for bankruptcy. After this statute was amended in 2005, post-petition association fees are not dischargeable in bankruptcy "as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest" in the property. 11 U.S.C. § 523(a)(16); Hijjawi v. Five N. Wabash Condo. Ass'n, 495 B.R. 839, 848-49 (N.D. Ill. 2013).

Defendant had an interest in the property. The law is well established that a mortgagor retains an interest in the property until the actual foreclosure sale. Borough of Merchantville v. Malik & Son, LLC, 218 N.J. 556, 567 (2014). "The initiation of foreclosure proceedings does not extinguish the mortgagor's interest in the encumbered property. The mortgagor has the right to satisfy the debt at any time before entry of judgment and thereafter under certain circumstances. This right is referred to as the right to redeem or the right of redemption." Id. at 566-67. The right of redemption was "'created and devised by equity to

protect a mortgagor from the forfeiture of his title.'" Id. at 568 (quoting Lobsenz v. Micucci Holdings, Inc., 127 N. J. Super. 50, 52 (App. Div. 1974)). Therefore, defendant's interest in the property continued after the foreclosure judgment to the sheriff's sale that took place on February 28, 2019.

Defendant did not show that her bankruptcy changed this result. Merely because defendant omitted the property from a schedule in the September 7, 2016 bankruptcy filing did not divest her of ownership nor did she cite any authority to support this argument. Defendant apparently confused abandonment of the property by the trustee with abandonment by herself. Under the bankruptcy rules, the trustee can abandon property that has no value to the estate. See 11 U.S.C. § 554(a) (providing "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate"). If that is done, the property reverts to the debtor as if there is no bankruptcy. See In re Matter of Henry, 173 B.R. 878, 883 n.11 (Bankr. D.N.J. 1993) (citing Dewsnup v. Timm (In re Dewsnup), 908 F.2d 588, 590, aff'd, 502 U.S. 410 (1990)); see also In re St. Lawrence Corp., 239 B.R. 720, 723 (Bankr. D.N.J. 1999), aff'd, 248 B.R. 734 (D.N.J. 2000). Title searches after 2016 also showed that defendant was the

owner. Therefore, there was no factual issue that defendant maintained a legal and equitable interest in the property.

Defendant argues that service of the complaint raised issues of fact that are material. A sheriff's return of service "is prima facie evidence that service of process . . . was proper." Garley v. Waddington, 177 N. J. Super. 173, 181 (App. Div. 1981). Even if this presumption did not extend to a private server, after the summary judgment motions were filed, defendant's attorney signed an acknowledgement of service. "A general appearance or an acceptance of the service of a summons, signed by the defendant's attorney or signed and acknowledged by the defendant . . . shall have the same effect as if the defendant had been properly served." R. 4:4-6. In this context, this acknowledgment rendered any prior factual dispute about service immaterial. It no longer mattered to resolution of the issues because service was accepted, and the summary judgment motions were able to be heard. Even if the trial court erred in its initial ruling in March 2019, that became harmless once service of the complaint was accepted in this manner.

After carefully reviewing the record and the applicable legal principles, we conclude that defendant's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-1803-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1803-19