This matter comes before me on exceptions to a master's report.
The facts in the case are that complainant, the holder of a first mortgage known as an installment building and loan mortgage, for the principal sum of $45,000 covering property in Bayonne, New Jersey, owned by the defendant Mongiello Brothers, Incorporated, began foreclosure of its mortgage. The defendant The Delaware, Lackawanna and Western Coal Company is the owner of a second mortgage for the principal sum of $50,000. The bill to foreclose was filed May 22d 1933, and alleged arrearages in interest, premiums and fines for three or four months prior to the filing of the bill. At the time the bill was filed all installments had been paid except for the month of April and interest and premiums for the months of March and April, 1933. Mongiello Brothers, Incorporated, continued to make payments during the foreclosure proceedings amounting to about $2,919.36 until the interlocutory decree was entered, which payments were credited by the complainant on the installments, interest, dues and fines due to it from the mortgagor. Interlocutory decree was entered on August 26th, 1933. Defendant, during this period, also paid taxes amounting to over *Page 272 
$5,000 and water rents in the sum of about $393. On September 11th, 1933, complainant's solicitor wrote defendant Mongiello Brothers, Incorporated, stating that it had not paid the taxes within the time agreed upon and that, therefore, an interlocutory decree had been entered on August 26th, under which the complainant would be entitled to prove his mortgage before a master but that he disliked to do so if there could be a definite understanding relative to the payment of the taxes for 1932 and 1933 which amounted to around $10,600. On November 4th, 1933, complainant proved the amount due on its mortgage before a master as also did the defendant The Delaware, Lackawanna and Western Coal Company. The amount due complainant at that time was $30,043.15 and the amount due on the mortgage of defendant The Delaware, Lackawanna and Western Coal Company was $50,525. On November 14th, 1933, the final decree was entered. Complainant did not proceed with the execution and sale under this decree but induced the defendant to make further payments. These payments between November 14th, 1933, and March, 1935, amounted to about $7,467.81. Defendant Mongiello Brothers, Incorporated, also paid taxes covering said premises for the years 1931, 1932 and 1933 totaling $12,469. The said mortgagor also paid water rents in the approximate sum of $2,300. In March, 1935, a writ of fierifacias, which complainant has been holding since November 14th, 1933, was delivered to the sheriff and the property advertised for sale. The sale, however, was adjourned from time to time on the promise of Mongiello Brothers, Incorporated, to pay additional sums to the complainant. Such payments were made to the complainant amounting to $3,505.29 and payments of taxes for the years 1934 and 1935 were made by the said defendant amounting to $6,600 and payments of water rents covering a period from March, 1935, to November, 1935, amounting to approximately $3,300. In November, 1935, Mongiello Brothers, Incorporated, owed taxes for the balance of 1935 of approximately $2,000 and water rents amounting to about $1,400. Evidently for some reason the complainant decided to proceed *Page 273 
with the sale and so notified the defendant The Delaware Lackawanna and Western Coal Company stating, however, to said company that it did not object to an adjournment. The sale thereupon was adjourned and another payment was made by the defendant Mongiello Brothers, Incorporated, to complainant of $419.79. On December 2d 1935, the solicitor for Mongiello Brothers, Incorporated, and an officer of The Delaware, Lackawanna Western Coal Company appeared at a meeting of the complainant association and discussed the matter of payments which had been made by Mongiello Brothers, Incorporated, to complainant and the application of the same on complainant's mortgage and decree. On December 3d, complainant wrote the defendant The Delaware, Lackawanna and Western Coal Company to the effect that they would oppose any further adjournment of the sale unless the said defendant agreed that the application which the complainant had made of the payments received from Mongiello Brothers, Incorporated, was agreed to by the defendant The Delaware, Lackawanna and Western Coal Company. It appears that the complainant had applied the payments to it by Mongiello Brothers, Incorporated, on dues, fines, premiums and interest the same as if the mortgage were still in existence and no decree had been entered. After receipt of this letter by complainant the defendant The Delaware, Lackawanna and Western Coal Company filed a petition in this court asking this court to determine the present amount due on final decree of complainant. The matter was referred by the vice-chancellor, to whom application was made, to one of the masters of this court to ascertain and report the amount due to complainant upon its final decree. The master made his report and found that the amount due complainant was the sum of $30,043.15 which was the amount of the final decree together with interest thereon from November 4th, 1933, the date of the master's report in the foreclosure, and that the amount due The Delaware, Lackawanna and Western Coal Company was the sum of $50,525 together with interest from November 4th, 1933, together with taxed costs, c. *Page 274 
Complainant's counsel contends that the master erred in finding this amount due to the complainant. He says that the payments made by Mongiello Brothers, Incorporated, were on account of the premiums, dues, interest and fines the same as if no decree had been entered and that complainant was entitled, in accordance with an understanding with Mongiello Brothers, Incorporated, to make such credits and ignore any interest or rights which The Delaware, Lackawanna and Western Coal Company might have as second mortgagee. He contends that the second mortgagee could not complain as to any agreement made between complainant as first mortgagee and the defendant Mongiello Brothers, Incorporated, mortgagor.
The master found that complainant, instead of proceeding to a sale pursuant to the decree, elected to postpone the same after final decree and accept payments from defendant Mongiello Brothers, Incorporated. He found there was no satisfactory proof of an express agreement either oral or written whereby the parties agreed to disregard the decree and adopt the foreclosed mortgage in its place and that no such agreement could be implied from the conduct of the parties. It is true that complainant apparently never abandoned its right to continue the foreclosure. It held such right as a threat over the defendant, Mongiello Brothers, Incorporated, in order to induce Mongiello Brothers, Incorporated, to continue payments. It never applied to the court to cancel the decree or to restrain the proceedings. All of the correspondence between complainant and Mongiello Brothers, Incorporated, indicates such a course. Mongiello Brothers, Incorporated, paid to complainant's solicitor $500 during the months of August and September, 1935, as counsel fees which were demanded before the foreclosure would be discontinued. The foreclosure, however, was never discontinued. Mr. Cook, the secretary of the defendant The Delaware, Lackawanna and Western Coal Company testified that he was informed by complainant's solicitor that the moneys paid by Mongiello Brothers, Incorporated, to complainant were being paid in reduction of the decree and were not being *Page 275 
applied on the mortgage because as a matter of fact the mortgage no longer existed. Solicitor of complainant refused to state whether or not he so informed Mr. Cook.
Irrespective as to whether or not there was an agreement between the complainant and Mongiello Brothers, Incorporated, as to how payments by Mongiello Brothers, Incorporated, to complainant should be applied, the question arises whether or not such an agreement would bind the defendant The Delaware, Lackawanna and Western Coal Company and also whether such an agreement was valid as effecting a final decree. There is no evidence of a written agreement between the parties and, as above stated, the decree still remains and no new mortgage was ever executed.
Chancellor Walker in the case of Hudson Trust Co. v. Boyd,80 N.J. Eq. 267, 269, said:
"Now, the mortgage is very effectually continued when merged into a decree of foreclosure, which can be enforced by execution at any time within twenty years [on notice to defendant after the lapse of six years], and, under the terms of the decree, the defendants are not foreclosed of the equity of redemption until the premises are actually sold by virtue thereof.
"In fact when merged into a decree the debt which before was one by specialty becomes one of record. A debt of record, says Blackstone, is a contract of the highest nature, being established by the sentence of a court of judicature. 2 Bl. Com.465. A debt of record is a sum of money which appears to be due by the evidence of a court of record. 2 Words and Phrases 1891.
See, also, New Jersey Insurance Co. v. Meeker, 37 N.J. Law
(8 Vr.) 282, 301. A judgment debt is one which is evidenced by matter of record. Bouv. Dict. (Rawle's Rev.) 513. A debt by specialty is a sum of money due or acknowledged to be due by deed or instrument under seal. 2 Bl. Com. 465. * * *
"After decree the proceedings are under the control of the court, and will only be opened in order to prevent fraud or mistake. Consolidated Electric Storage Co. v. Atlantic TrustCo., 50 N.J. Eq. (5 Dick.) 93." *Page 276 
It is quite obvious that such must be the law and that every party to the suit is bound thereby and has the right to assume that such decree represents the final determination of the debt and amount due thereunder as therein stated and that such debt draws legal interest from the date of its record and no more and that such decree cannot be considered as non-existent for the purpose of allowing a complainant and defendant to continue a contract which was settled by the entry of such decree which would effect the interest of another defendant who is not a party to such agreement. If this were not so other creditors of a defendant could never be sure that the defendant's rights and liabilities under a decree had been finally established. Complainant contends that while the mortgage merged in the final decree yet the merger is not such as will foreclose the defendants of the equity of redemption until the premises are actually sold, citing the case of Heritage v. Bethel, 96 N.J. Eq. 515.
Such is no doubt the law but this does not give complainant the right to apply payments made by the mortgagor on account of the mortgage instead of on the decree when the rights of another defendant, a second mortgagee whose interest has been determined by the court, are effected thereby. Complainant cites a number of cases wherein it is suggested that a new agreement may be entered into between the complainant mortgagee and the defendant mortgagor relative to settlements of the decree. None of these cases cited, however, involved the question of the rights of a second mortgagee.
The only question involved in this case is whether, after the decree was entered, the payments made by the mortgagor to the first mortgagee should have been credited on the decree or whether by an alleged agreement made between the complainant and first mortgagee the payments could have been credited, as complainant alleges they were, for the interest, fines, dues,c., under the terms of the mortgage to the detriment of the second mortgagee who has made application to have this matter determined. Complainant cannot, on the one hand, lay aside the decree for the purpose of applying payments on the interest, premiums and fines, and then, on *Page 277 
the other hand, bring the decree again into effect for the purpose of proceeding with the sale thereunder.
I have concluded that the master reached the proper result in this matter and I will, therefore, advise a decree to that effect.