GEIGER, J.S.C. (temporarily assigned).
*1041 *342 Plaintiff Customers Bank appeals from an October 5, 2016 order: (1) vacating a December 31, 2014 order; (2) reinstating the final judgment of foreclosure in the amount of $612,912.31, inclusive of interest and counsel fees; (3) declaring the foreclosure judgment satisfied; and (4) ordering plaintiff to refund the sum of $28,976.13 to defendant Reitnour Investment Properties, LP (RI Properties). For the reasons that follow, we affirm.
*343 I.
We derive the following facts from the record. Between 1999 and 2012, plaintiff, defendant Phillip A. Reitnour (Reitnour), and other entities in which Reitnour has an ownership interest (the Reitnour entities) entered into a series of four loan agreements.
Among these transactions was a 2008 loan entered into by ANYTHINGFORSALEBYOWNER.COM, LLC (Anything for Sale) (the 2008 Loan). Anything for Sale borrowed the principal amount of $600,000 from New Century Bank, now known as Customers Bank. The 2008 Loan was memorialized in a Promissory Note (the 2008 Note) and Business Loan Agreement and secured by a second mortgage on property located in Stone Harbor, New Jersey (the Stone Harbor property) and an assignment of rents. The mortgage contains a maximum lien clause, which states: "The lien of this [m]ortgage shall not exceed at any one time $600,000.00."
RI Properties, is the fee simple owner of the Stone Harbor property. The property is a summer home for Reitnour, the principal of RI Properties. Reitnour and RI Properties were listed as guarantors on the loan agreement.
The 2008 Note contains the following prepayment clause:
PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, indicates any check or other payment instrument that includes that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: New Century Bank, 99 Bridge Street, Phoenixville, PA, 19460-3411.
*1042 *344 [ (Emphasis added).]
The Stone Harbor property was further pledged as collateral to secure a commercial loan to Reitnour in 2012. This security took the form of a third mortgage lien.
On August 1, 2013, one of the loans became due, triggering a cross-default and acceleration, encompassing all loans entered into by plaintiff, Reitnour, and the Reitnour entities. On September 16, 2013, plaintiff entered into a forbearance agreement with Reitnour and the Reitnour entities. The parties agreed to a six-month extension on all loan agreements. While RI Properties is listed as a party to the forbearance agreement, it did not execute the agreement.
The Forbearance Agreement reads in relevant part:
Cross-Collateralization. Borrower acknowledges that a condition of this Forbearance Agreement is that all loans and obligations shall service as collateral for each of the related loans and obligations. It is agreed that all loans and their security shall serve as collateral for each and every obligation and loan and are cross-collateralized.
On April 24, 2014, plaintiff filed three actions for confession of judgment in the Court of Commons Pleas for Chester County, Pennsylvania. This led to the entry of judgments by confession against Phillip A. Reitnour and RI Properties in the amount of $634,788.59 (the 2008 Loan); against Phillip A. Reitnour and Emergensee, LLC in the amount of $733,493.88 (the 2011 Loan); and against Phillip A. Reitnour, Emergensee U, Inc., and Emergensee, LLC in the amount of $875,264.63 (the 2012 Loan).
After Reitnour defaulted on the forbearance agreement, plaintiff commenced this foreclosure action on August 4, 2014, seeking to foreclose the Stone Harbor property.
On October 23, 2014, plaintiff voluntarily dismissed the unknown occupants as defendants and filed a motion to enter final judgment in foreclosure against Reitnour and RI Properties in the amount of $585,764.74.
After receiving a notice of deficiency from the Office of Foreclosure with regard to service of Reitnour and as to the third *345 mortgage lien, plaintiff dismissed Reitnour as a defendant in the foreclosure action and proceeded with the foreclosure action only in regard to the second mortgage lien arising out of the 2008 Loan (the mortgage).
On December 11, 2014, in the course of the confessed judgment proceedings, plaintiff, Reitnour, and the confessed judgment defendants (including RI Properties) entered into a settlement agreement in which the borrowers and guarantors were collectively identified as "Reitnour." The Settlement Agreement confirmed the total indebtedness of all outstanding loans was $2,569,422.94, confirmed the terms and provisions of the respective loan documents, and established settlement conditions for Reitnour and plaintiff, including a payment plan for plaintiff to "standstill" regarding the foreclosure.
The settlement agreement reads in relevant part:
2. Confirmation of Loan Documents. Reitnour hereby ratifies and confirms in all respects the terms and provision of the respective loan documents including the September 16, 2013 Forbearance Agreement and the Allonges attached thereto as well as the original loan documents and any modifications thereof.
3. Conditions of Settlement to [RI Properties]...[RI Properties] agrees as follows:
(a) [RI Properties] shall pay the sum of Five Hundred Thousand ($500,000.00) Dollars ... on or before December *1043 31, 2014, with the payment to be credited against the total amount of indebtedness ... ; and
(b) [RI Properties Defendant] shall pay the balance due and owing to [plaintiff] as set forth ... in Paragraph 1 ... on or before March 31, 2015 for all loans ... ;
....
4. [Plaintiff's] Conditions of Settlement. [Plaintiff] agrees as part of this Settlement Agreement, [plaintiff] will undertake the following actions ...
(a) [Plaintiff] shall "standstill" with respect to its efforts to recover and/or collect the total amount of indebtedness more fully set forth in paragraph 1 .... By agreeing to standstill [plaintiff] further agrees to undertake no execution, garnishment, foreclosure or other remedy, including the action pending in the Superior Court of New Jersey, Cape May County at Docket Number F-31832-14, in consideration of [RI Properties'] agreement to pay the amounts due and owing ...[.]
In conformance with the settlement agreement, Reitnour made two wire transfers totaling $500,000 to plaintiff prior to December *346 31, 2014. Although Reitnour and the Reitnour entities were thereby current in their payments under the settlement agreement, plaintiff applied for entry of default judgment, in direct violation of the "standstill" provision.
On December 31, 2014, a final judgment of foreclosure by default was entered in the amount of $559,050.09. After including accrued interest and counsel fees, the total amount necessary to satisfy the foreclosure judgment was $585,246.63. Plaintiff did not seek to amend the foreclosure judgment within twenty days as provided under Rule 4:49-2.
Reitnour and the Reitnour entities failed to make the additional payments due under the settlement agreement by March 31, 2015. On April 1, 2015, Reitnour filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania. On April 9, 2015, plaintiff filed a proof of claim in Reitnour's bankruptcy, identifying the amounts outstanding on the loans as of March 27, 2015.
On April 1, 2015, the parties to the confession of judgment proceedings stipulated to the appointment of a receiver "as to the person of Phillip A. Reitnour," Emergensee, LLC, Emergensse U, Inc., Anything For Sale, and RI Properties, leading to the entry of a series of April 15, 2015 orders by the Court of Common Pleas for Chester County, Pennsylvania, appointing John Fiorello as receiver for Reitnour and the Reitnour entities (including RI Properties).
In June 2015, plaintiff sent Reitnour a spreadsheet containing a detailed breakdown of the purported remaining balances of each of the loans. The remaining balances on the individual loans were listed as follows: $449,453.53 (the 2001 Loan); $636,434.04 (the 2008 Loan); $275,330.01 (the 2011 Loan); and $847,505.05 (the 2012 Loan).
On August 3, 2015, RI Investment Group, LP (RI Group) delivered two checks to plaintiff in the amount of $641,888.44 and $277,396.11. RI Group is an affiliate of RI Properties in which *347 Reitnour also has an ownership interest. The memo lines for the checks stated, "Payoff Loan [the 2008 Loan] in full (Emergensee LLC) per payoff statement" and "Payoff Loan [the 2011 Loan] in full (Phillip A. Reitnour) per payoff statement," respectively. RI Properties claims the express purpose of the check paying off the 2008 Loan was to satisfy the foreclosure judgment.
On August 10, 2015, plaintiff, through counsel, advised Reitnour's bankruptcy *1044 counsel that the funds were being held in escrow and that it would apply the funds as it deemed necessary. On October 7, 2015, RI Properties moved to vacate the foreclosure judgment, contending the payment by RI Group satisfied the foreclosure judgment. On October 15, 2015, plaintiff filed a cross-motion to amend the amount of the foreclosure judgment to include the aggregate indebtedness owed under the four loans pursuant to the settlement agreement. The complaint alleged the balance of the 2008 Loan was $536,613.23 as of April 7, 2014. According to plaintiff's affidavit of amount due, the balance due on the loan as of October 7, 2014 was $585,764.74. Plaintiff's cross-motion sought to amend the amount of the judgment to $2,569,422.94 as of December 29, 2014.[1] The motions remained pending for an extended period to allow repeated supplemental briefing. The judge also requested that plaintiff provide an updated certification of the amount purportedly due. On May 26, 2016, Reitnour's bankruptcy was dismissed sua sponte by the Bankruptcy Court.
On September 16, 2016, after several rounds of oral argument and supplemental briefing, but without plaintiff submitting a new certification of the amount due, the chancery court held: (1) plaintiff could not amend the foreclosure judgment to include the purported aggregate indebtedness; and (2) the foreclosure judgment was satisfied because plaintiff accepted the payment by RI
*348 Group. The judge declined to address the overpayment of the foreclosure judgment.
The court subsequently entered an October 5, 2016 order: (1) reinstating the previously vacated judgment of foreclosure for the total amount of $612,912.31; (2) directing the clerk of the court to mark the judgment satisfied; and (3) ordering plaintiff to return the overpayment of $28,976.13 to RI Properties within ten days. Notably, the order resolves the issue of the excess payment despite the judge expressly declining to do so during oral argument. This appeal followed.
On appeal, plaintiff argues the trial court abused its discretion in finding equitable redemption. Plaintiff further argues, for the first time on appeal, that the trial court failed to make factual and legal findings regarding its order that plaintiff refund $28,976.13 to RI Properties.
II.
"Foreclosure is an equitable remedy governed by the operation of traditional equitable principles ...." U.S. Bank v. Curcio, 444 N.J. Super. 94, 113, 130 A.3d 1269 (App. Div. 2016) (quoting N.J. Bank v. Azco Realty Co., 148 N.J. Super. 159, 166, 372 A.2d 356 (App. Div. 1977) ). Because equitable remedies are largely left to the judgment of the court, which has to balance the equities and fashion a remedy, such a decision will be reversed only for an abuse of discretion. See Sears Mortgage Corp. v. Rose, 134 N.J. 326, 354, 634 A.2d 74 (1993).
Although the ordinary "abuse of discretion" standard defies precise definition, it arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis. In other words, a functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue.
*1045 [ Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002) (citations omitted).]
*349 III.
Plaintiff argues the court abused its discretion by not incorporating the terms of the 2008 Note into the forbearance agreement and, subsequently, into the settlement agreement. Plaintiff contends incorporating the language of the 2008 Note into the subsequent agreements disqualifies defendant's payments marked "paid in full" and preserves plaintiff's right to accept such payments without losing any rights. The settlement agreement confirmed the outstanding loans, confirmed the authority of the loan documents, and set forth the settlement terms and conditions.
As a condition of the settlement, plaintiff agreed to "'standstill' with respect to its efforts to recover the total amount of indebtedness." Among other actions it agreed not to pursue, plaintiff agreed not to undertake "foreclosure or other [remedies], including the action pending in the Superior Court of New Jersey, Cape May County at Docket Number F-31832." In exchange for plaintiff standing still as to its foreclosure action, Reitnour agreed to pay plaintiff $500,000 before December 31, 2014, and to pay the balance of the outstanding loans before March 31, 2015.
Reitnour timely remitted the required $500,000 payment due on December 31, 2014. Even though Reitnour had not yet breached the settlement agreement, and there was no basis at that point to suspect he would default, plaintiff applied for and obtained a default foreclosure judgment on December 31, 2014, contrary to the "standstill" condition imposed on plaintiff by the settlement agreement. To be sure, plaintiff secured final judgment before the March 31, 2015 payoff deadline and before Reitnour declared bankruptcy on April 1, 2015.
"Generally, a settlement agreement is governed by principles of contract law." Thompson v. City of Atl. City, 190 N.J. 359, 379, 921 A.2d 427 (2007). Acquiring the foreclosure judgment on December 31, 2014, before the settlement agreement was breached, defeated its purpose and constituted a material breach of its terms.
*350 Aside from plaintiff's material breach of the settlement agreement, all of plaintiff's contractual rights merged into the foreclosure judgment when it was entered. Washington Mut., F.A. v. Wroblewski, 396 N.J. Super. 144, 149, 933 A.2d 32 (Ch. Div. 2007). "[T]he general rule [is] that a loan no longer exists after a default leads to the entry of a final judgment." Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 580, 25 A.3d 1103 (2011). This rule reflects the policy that the foreclosure judgment "represents the final determination of the debt and amount due" on the mortgage being foreclosed. Colonial Bldg.-Loan Ass'n v. Mongiello Bros., 120 N.J. Eq. 270, 276, 184 A. 635 (Ch. 1936).
It is well settled that the mortgage merges into the final judgment of foreclosure. Virginia Beach Fed. v. Bank of New York, 299 N.J. Super. 181, 188, 690 A.2d 1040 (App. Div. 1998). Under New Jersey law, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. In re Roach, 824 F.2d 1370, 1377 (3d Cir. 1987). As a result, upon entry of a foreclosure judgment, all contractual rights under the mortgage are merged into the foreclosure judgment. Ibid. The merger doctrine provides that, upon foreclosure, the mortgage merges into the final judgment of foreclosure and "every party ... has the right to assume that such decree represents the final determination of the debt," Colonial Bldg.-Loan Ass'n v. Mongiello Bros., Inc., 120 N.J. Eq. 270, 276, 184 A. 635 (Ch. Div. 1936).
*1046 Even if a mortgage were not extinguished when a judgment is entered, a final state court foreclosure judgment in New Jersey establishes rights in the property distinct from those conferred by the mortgage. Under New Jersey law, "the final judgment in an action to foreclose real estate mortgage fixes the amount due under the mortgage and directs the sale of the real estate to raise funds to satisfy the amount due." Roach, 824 F.2d at 1377-78 (citing Eisen v. Kostakos, 116 N.J. Super. 358, 364, 282 A.2d 421 (App. Div. 1971) ; Central Penn Nat'l Bank v. Stonebridge Ltd., 185 N.J. Super. 289, 301-02, 448 A.2d 498 (Ch. Div. 1982) ). "In New Jersey, as in many states, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished." Roach, 824 F.2d at 1377. Moreover, all the terms, including the rights and obligations under the mortgage such as pledged rents, merge into the foreclosure judgment and the only thing remaining is the foreclosure judgment itself. Id. at 1370.
[ Washington Mut., 396 N.J. Super. at 149-50, 933 A.2d 32.]
Prior to obtaining the foreclosure judgment, plaintiff had a security interest in the Stone Harbor property based on the mortgage. Upon entry of the foreclosure judgment on December 31, 2014, all of plaintiff's interests in the Stone Harbor property as a mortgagee merged into the judgment.
*351 Plaintiff contends that because all four loans and obligations were cross-collateralized, this should somehow alter the mortgage and the foreclosure judgment. Plaintiff cites no authority to support this assertion.
"A 'cross-collateral' clause is a type of dragnet clause." 29 N.J. Practice, Law of Mortgages with Forms § 3.30, at 192 (Myron C. Weinstein) (2d ed. 2001) (citing Black's Law Dictionary 508 (7th ed. 1999)). A dragnet clause "secures all the debts that the mortgagor may at any time owe to the mortgagee." Ibid. While dragnet clauses are enforceable in New Jersey, they are "regarded with disfavor. Courts have tended to construe such clauses narrowly and strictly against the mortgagee." Id. at 193. Even if otherwise enforceable, the cross-collateralization clause was extinguished through merger into the foreclosure judgment.
Plaintiff was also procedurally deficient regarding enforcement of its dragnet clause.
In a foreclosure action, at time of judgment, the foreclosing attorney, in reliance on the clause, merely submits certified copies of all indebtedness between the parties, totaling it, and requesting that the foreclosure judgment be entered, in the normal course, for the total amount of the indebtedness plus interest and costs.
[Weinstein, § 3.30, at 192.]
Here, even if plaintiff's dragnet clause otherwise allowed it to aggregate all of the loan balances owed by RI Properties, plaintiff failed to incorporate the aggregate balance into its application for entry of default judgment. Instead, plaintiff sought and obtained default judgment in the amount of $585,764.74, representing the balance then due on only the 2008 Loan.
Plaintiff did not move to amend the foreclosure judgment within twenty days of its entry. On the contrary, plaintiff waited more than nine months after the foreclosure judgment was entered to file its cross-motion to include the aggregate indebtedness in the foreclosure judgment. Plaintiff was time-barred from amending the judgment amount at that late date. A motion "seeking to alter or amend a judgment or order shall be served not later than [twenty] days after service of the *1047 judgment or order upon all parties by the party obtaining it." R. 4:49-2. "Neither the parties *352 nor the court may, however, enlarge the time specified by ... [Rule ] 4:49-2 (motion to alter or amend a judgment)[.]" R. 1:3-4(c). The chancery court properly denied the motion as time-barred.
We further note that a final judgment by default must conform with the complaint and "shall not be different in kind nor exceed the amount demanded in the pleading, except that in continuing causes, installments coming due after the filing of the pleading but before entry of judgment may be added to the amount of the demand stated in the pleading." R. 4:43-2(c). The complaint alleged the balance of the 2008 Loan was $536,613.23 as of April 7, 2014. According to plaintiff's affidavit of amount due, the loan balance as of October 7, 2014 was $585,764.74. Plaintiff's cross-motion sought to amend the amount of the judgment to $2,569,422.94 by including the balance due on all four loans. For this additional reason, the chancery court properly denied the cross-motion to amend the judgment amount.
Pursuant to the merger doctrine, plaintiff is precluded from demanding payment of the aggregate loan balance beyond the amount reflected in the judgment. Therefore, the amount necessary to redeem the foreclosure judgment is the amount of the judgment plus lawful interest accruing thereafter.
Similarly, the merger doctrine precludes enforcement of the restrictions imposed by the prepayment clause in the 2008 Note. In any case, the prepayment clause is clearly designed to prevent the borrower from attempting an early payoff of the loan for an amount less than the remaining balance. The payoff check was not an attempt to satisfy the 2008 Loan by paying less than the loan balance. Consequently, the prepayment clause has no applicability. Once the judgment was entered, payment of the redemption amount could be designated to be applied exclusively to the 2008 Loan balance; plaintiff could not legally apply the payment to the aggregate loan balance.
Other than contending the amount necessary to redeem the mortgage was the aggregate loan balance, plaintiff does not claim *353 the trial court inaccurately calculated the amount due on the 2008 Loan as of the date of its ruling. Nor does plaintiff otherwise claim the amount of overpayment to be refunded was incorrect.
IV.
We next address whether plaintiff accepted the payment and the consequences thereof. RI Properties argues the memo section of the two payoff checks unambiguously states the intention and purpose of the checks. The check for $641,888.44 was designated to satisfy the 2008 Loan in full in accord with the payoff balance contained in plaintiff's account breakdown. Indeed, in its brief, plaintiff states: "Reitnour caused another entity, 'Reitnour Investment Group,' to deliver a check to [plaintiff] designated as payment in full for the 2008 loan." The check for $277,366.11 was designated to satisfy the 2011 Loan in full in accord with the payoff balance contained in plaintiff's account breakdown. RI Properties claims, that by accepting and depositing the payoff checks with full understanding of the designated loans to which the checks were to be applied, plaintiff is bound by RI Group's redemption on behalf of RI Properties. The chancery court agreed.
Even though RI Group delivered checks that were purportedly unsatisfactory to plaintiff, plaintiff still deposited them, held the funds in escrow, and claimed it had the sole authority to apply the funds as it deemed necessary.
*1048 In those cases in which a check bears a notation indicating that it is being tendered in full satisfaction of the disputed debt, we impute to the creditor an intent to be bound by the amount of the check if the creditor deposits the check for collection, notwithstanding the deposit is made "under protest."
[ Zeller v. Markson Rosenthal & Co., 299 N.J. Super. 461, 463-64, 691 A.2d 414 (App. Div. 1997).]
If plaintiff determined the check was unacceptable to redeem the 2008 Loan, its remedy was to return the check to RI Group and continue to enforce the foreclosure judgment. See A.G. King Tree Surgeons v. Deeb, 140 N.J. Super. 346, 349, 356 A.2d 87 (Cty. Dist. Ct. 1976) ("If the check was unacceptable as a final settlement, *354 plaintiff's remedy was to return the check to defendant and sue for the full amount claimed due.").
Since plaintiff retained, deposited, and threatened to apply the allegedly unacceptable check to the various loan balances at its sole discretion instead of returning it to RI Group, we deem plaintiff to have accepted the payment. In accord with our earlier analysis of the merger doctrine, the designated check satisfied the 2008 Loan and foreclosure judgment. We further note that by accepting the payment, there is no basis to believe plaintiff was concerned with its validity. In this situation, it would appear only RI Properties or Reitnour were in a position to object to the payoff of the judgment by RI Group. Neither RI Properties nor Reitnour claim RI Group's satisfaction of the foreclosure judgment infringes, in any way, upon RI Properties' fee simple ownership or Reitnour's interests in the property.
V.
The foreclosure judgment was satisfied by RI Group. Plaintiff argues the court abused its discretion by allowing RI Group to exercise an equitable right of redemption held by RI Properties or Reitnour. In turn, RI Properties responds that RI Group, by having Reitnour as its principal, had a sufficient interest in the Stone Harbor property to properly exercise the right of equitable redemption.
"[A] mortgagor has an absolute right to redeem the property by tendering the full amount due on the mortgage." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 315, 787 A.2d 942 (App. Div. 2002) (citing Hardyston Nat'l Bank v. Tartamella, 56 N.J. 508, 513, 267 A.2d 495 (1970) ). In addition, "all persons who have acquired an interest in the lands mortgaged" may redeem. Marine View Sav. & Loan Ass'n v. Andrulonis, 31 N.J. Super. 378, 380, 106 A.2d 559 (Ch. Div. 1954) (quoting Bigelow v. Cassedy, 26 N.J. Eq. 557, 558 (E. & A. 1875) ).
"The essence of the doctrine is that one seeking to redeem must possess part of the original equity of redemption." 30 N.J. Prac tice, Law of Mortgages with Forms *355 § 20.3, at 9 (Myron C. Weinstein) (2d ed. 2000). "Similarly, the holder of an interest unaffected by the mortgage is not entitled to redeem as he would not be prejudiced by foreclosure." Ibid.
Almost any interest will be sufficient to allow redemption provided that it is subject to the mortgage. The most obvious person entitled to redeem is the mortgageor who has retained his interest; similarly, his heirs and devisees, his grantees, his assignee for the benefit of creditors, and the purchaser of his interest at a judicial sale can redeem. One with an undivided interest in the property can redeem. The holders of lesser interests in the mortgaged property such as a tenant for life or for years, the holder of an easement, a doweress, or a *1049 remainderman or reversioner can exercise the right.
[Id. at 10 (footnotes omitted).]
RI Group does not have an ownership interest in the mortgaged premises. It is not a mortgagor, borrower, or guarantor of the 2008 Loan. It is not a party to the foreclosure action, forbearance agreement, or settlement agreement.
RI Properties owns the Stone Harbor property in fee simple. Reitnour is the president and sole shareholder of Reitnour Property Corporation, and general partner of RI Properties. He is a limited partner in RI Properties and RI Group. Reitnour is also the president and sole shareholder of Reitnour Investment Corp., the general partner of RI Group.[2] Indeed, Reitnour signed the payoff check for the 2008 Loan. RI Properties describes its relationship to RI Group as "an affiliation."
Reitnour had a right to redeem the mortgage because he was a guarantor of the 2008 Loan and a borrower on the 2001, 2011, and 2012 Loans. Weinstein, § 20.3, at 10. He was a named defendant in the foreclosure action until dismissed by plaintiff. Reitnour is involved in the ownership and management of each of the Reitnour entities.[3] Thus, while RI Properties and RI Group are separate *356 legal entities, they are connected through Reitnour's overarching involvement. Moreover, the Stone Harbor property is used by Reitnour as his summer home.
In light of plaintiff's acceptance of the payment from RI Group satisfying the 2008 Loan and foreclosure judgment, we need not decide whether RI Group could redeem the property under these circumstances.
VI.
Finally, plaintiff argues, for the first time on appeal, and without legal support, the chancery court abused its discretion by overlooking the "unclean hands" of RI Properties, which was in default of the settlement agreement yet demanded an equitable remedy. We are unpersuaded by this argument as it lacks a factual or legal basis.
As discussed earlier, RI Properties was not in default of the settlement agreement when plaintiff applied for entry of default judgment. Consequently, plaintiff was required to "standstill" with respect to the foreclosure action. Thus, it was plaintiff, not defendants, whose hands appear to have been unclean.
More fundamentally, a payment default does not strip a mortgagor of its right to redeem the mortgage by paying off the foreclosure judgment in a timely fashion. A party's absolute right of redemption does not terminate until ten days after the foreclosed property is sold at a sheriff's sale. Carteret Sav. & Loan Ass'n v. Davis, 105 N.J. 344, 349, 521 A.2d 831 (1987) ; Hardyston, 56 N.J. at 513, 267 A.2d 495 (holding the mortgagor is permitted "to redeem within the ten-day period fixed by [Rule ] 4:65-5 for objections to the sale and until an order confirming the sale if objections are filed under the rule").
The right of redemption should be applied to favor the mortgagor and to avoid a forfeiture. See Hardyston, 56 N.J. at 513, 267 A.2d 495. "This right is of such utmost importance that our laws do not permit it to be waived in a mortgage instrument *357 or in a contemporaneous *1050 agreement." Borough of Merchantville v. Malik & Son, LLC, 218 N.J. 556, 568, 95 A.3d 709 (2014) (citing Hardyston, 56 N.J. at 513, 267 A.2d 495 ). However, a "mortgagor may, at any time after the execution of the mortgage, by a separate and distinct transaction, sell or release his equity of redemption to the mortgagee." Mercury Capital Corp. v. Freehold Office Park, Ltd., 363 N.J. Super. 235, 250-51, 832 A.2d 369 (Ch. Div. 2003) (quoting 4 Pomeroy, Equity Jurisprudence, § 1193 at 571-73 (5th ed. 1941)).
Here, plaintiff had the opportunity to negotiate a termination of Reitnour's right to redeem as part of the settlement agreement. Apparently, it did not do so. The settlement agreement does not contain any language extinguishing RI Properties' or Reitnour's right to redeem. See Mercury Capital, 363 N.J. Super. at 249-50, 832 A.2d 369.
VII.
Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
In summary, we affirm the Chancery Division's order reinstating the previously vacated judgment of foreclosure, determining the judgment satisfied, and ordering plaintiff to return the overpayment to RI Properties within ten days.
Affirmed.

We note, however, the proposed order submitted by plaintiff states a different amount, $2,069,422.94.

Reitnour's exact position with RI Group is not disclosed by the record.

In addition to his involvement with RI Properties and RI Group, Reitnour is a member of Emergensee, LLC, president of Emergensee U, Inc., and manager and member of Anything for Sale.